UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., | § § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. H-07-2392 |
| MAERSK CONTRACTORS USA INC., *et al*, | § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

## I.   INTRODUCTION

Before the Court are the motion for summary judgment of no willfulness brought by Maersk Contractors USA, Inc., (Maersk USA) (#81), and Transocean Deepwater Drilling, Inc. ("Transocean") (#91) response to Maersk USA's motion. Also, before the Court are Maersk USA's reply and Transocean's sur-reply and supporting case law.  The Court has reviewed the motion, response and replies and determines that Maersk USA's motion should be granted.

## II.   FACTUAL SUMMARY

The underlying factual history shows that the United States Patent Trademark Office ("PTO) issued United States Patent Nos. 6,047,781 ("the '781 Patent"); 6,056,071 ("the '071 Patent); 6,068,069 ("the '069 Patent"); and 6,085,851 ("the '851 Patent") to Transocean on or about July 11, 2000.  The invention is described as Multi-Activity Offshore Exploration and/or Development Drilling Method and Apparatus.  Transocean's Patents generally presents an offshore drilling assembly that includes a superstructure or derrick, a first and second tubular advancing station, and an assembly adjacent to the stations capable of transferring tubular

assemblies between the stations allowing simultaneous drilling and auxiliary activities for a single well.  As a drilling contractor, Transocean provides drilling rigs to oil companies with the pledge that its invention saves drilling time through the cooperation of the two drilling stations under a single derrick.

On May 27, 2005, A.P. Moller-Maersk A/S negotiated and contracted with Koppel FELS Limited to build a DSS-21, an Ultra Deepwater Development Semisubmersible drilling rig. Maersk A/S is a Denmark corporation and the parent of the defendant Maersk USA in this case. Maersk USA entered into a contract on November 22, 2006, to utilize the DSS-21 to fulfill its drilling obligations to Statoil Gulf of Mexico, LLC.  And, although the contract between Maersk A/S and Keppel FELS was between two foreign corporations, Transocean contends that Maersk USA's parent corporation, Maersk A/S acted in behalf of Maersk USA, permitting Maersk USA to contract with Statoil to supply a dual activity rig to Statoil that  infringes Claim 17 of its '069 Patent.

At the time that Maersk USA contracted with Statoil, Transocean was involved in a suit with GlobalSantaFe Drilling Co. (GSF), that involved similar allegations of apparatus infringement of the same or similar claims as those asserted in the patents-in-suit. A permanent injunction was granted in behalf of Transocean against GSF in January 2007, enjoining GSF's use of its Development Drillers I and II auxiliary well centers to reach seabed and for drilling or auxiliary drilling operations.

 In the case at bar, the parties acknowledge that the Contract between Maersk USA and Statoil was executed before the rig was completed.  Likewise, the parties agree that the terms of the contract permit Maersk USA to modify the rig as necessary to avoid infringement of

Transocean's patents-in-suit.  And, finally, the parties do not dispute that the prior art discloses rigs that are capable of conducting dual operations simultaneously on more than one well.

## III.   CONTENTIONS OF THE PARTIES

### A.   *Transocean's Contentions*

Transocean contends that Maersk willfully infringed Claim 17 of the '069 Patent when it entered into the Statoil Contract.  In this regard, Transocean asserts that the Contract was negotiated between two United States companies in the United States and calls for the use of the dual activity rig built by Keppel FELS in the Gulf of Mexico which, according to Transocean, infringes its '069 Patent.  Transocean contends that the Contract describes a rig, the specification of which, infringes Claim 17 of its '069 Patent.  Finally, Transocean contends that the Contract, alone, between Maersk USA and Statoil is an act of infringement as it constitutes an "offer to sell" its rig to Statoil.

Transocean also contends that Maersk A/S copied Transocean's patented dual activity technology and, in the face of warnings from Transocean, Maersk USA contracted with Statoil to provide drilling activities in the Gulf of Mexico.  In this regard, Transocean argues that Maersk A/S's conduct is the conduct of Maersk USA.  Specifically, Transocean contends that Maersk A/S copied Transocean's technology and, as well, through Maersk USA, executed a contract with Statoil to perform drilling operations in the Gulf establishes Maersk's willfulness to infringe Transocean's Patents.  In sum, Transocean asserts that Maersk USA violated 35 U.S.C. § 271(a), by "offering to sell" an infringing item in violation of Claim 17 of the '069 Patent and by copying its technology.

B.     *Maersk's Contentions*

Maersk USA asserts that it is entitled to summary judgment on Transocean's willfulness claim because the relevant facts are undisputed.  It is undisputed that:  (a) Maersk's rig has a casing sleeve configuration identical to that constructed by GSF attached to the auxiliary rotary, which design was approved by this Court in related litigation between GSF and Transocean.[1] *See* [Cause No. H-03-2910, *Transocean v. Global Santa Fe*; modified Final Judgment]; (b) Maersk USA only took possession of the DSS-21 Rig on January 2, 2009; (c) the DSS-21 Rig has never entered United States waters; (d) Transocean's willfulness arguments are based on waived infringement theories; (e) the act of contracting is not an act of infringement; and, (f) Transocean's claim of an infringing "offer to sell" is not pled, therefore, has been waived.

IV.     STATEMENT OF THE RELEVANT LAW

A.     *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted.  *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

---

[1] A casing sock or sleeve is a hollow metal pipe that has a sealed bottom installed on the DSS-21 rig's auxiliary drill center that prevents the drill center from being able to advance tubulars, drilling pipe *et. seq.* into the water and/or the seabed.

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

  B. *Willful Infringement Standard*

By its motion for summary judgment, Maersk USA seeks to foreclose Transocean's opportunity for treble infringement damages. Title 35 U.S.C. § 284 permits a court to "increase the damages up to three times the amount found or assessed" where there has been willful infringement. *In re SEAGATE TECHNOLOGY, LLC*, 497 F.3d 1360, 1370 (Fed. Cir. 2007). Generally, the issue of infringement is reserved to a jury and only then after a finding of infringement. Patent infringement, while a tort, is not an intentional tort. Hence, there is no need to prove intent in a patent case. On the other hand, a claim for willful infringement does require a showing of intent.

The Supreme Court recently addressed the meaning of willfulness in *Safeco Ins. Co. of Am v. Burr*, 127 S.Ct. 2201 (2007).  There, the Court stated that willfulness requires a showing of "reckless conduct" or a showing of reckless disregard for the rights of another.  *Id.* at 2209.  A person acts recklessly when he acts "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  On the other hand, it is legitimate to deliberately design around another's patent. *See Read Corp. v. Portec, Inc.,* 970 F.2d 816, 828 (Fed. Cir. 1992).  Therefore, Transocean must show by clear and convincing evidence that Maersk USA acted recklessly despite an objectively high likelihood that its actions constituted infringement of a valid patent.  *See In Re SEAGATE*, 497 F.3d at 1371, [*citing Safe Co*., 1275 S.Ct. at 2215].  In the face of such an allegation of willful infringement, Maersk USA need only show that there is a reasonable basis for it to believe its actions were legitimate.  *See SRI Intern., Inc. v. Adv. Tech Lab., Inc.,* 127 F.3d 1462, 1464 (Fed. Cir. 1997).

## V.    DISCUSSION AND ANALYSIS
### A.

Transocean advances two bases upon which its willfulness claim rests.  First, Transocean asserts that construction of the DSS-21 constitutes infringement because Maersk A/S simply copied Transocean's patent design.  Next, Transocean asserts that the executed contract between Maersk USA and Statoil constituted an "offer to sell" or a "sale" as those terms are intended in § 271(a).  This assertion is supported by Transocean's claim that both Maersk USA and Statoil are United States corporations and negotiated and executed the Statoil Contract in the United States.

The evidence establishes that construction of the DSS-21 was the result of a contract between Kappel FELS Limited, a company organized under the laws of the Republic of

Singapore, and Maersk A/S a Denmark company.  Construction occurred at Keppel FELS' yard in Singapore.  There is no evidence that the contract to build the DSS-21 was negotiated or consummated by either Maersk USA or Statoil or the two jointly.  Therefore, the Court is of the opinion that as far as Transocean's claim of willfulness concerns the construction of the DSS-21, Maersk USA did not engage in willful conduct by the actions of its parent corporation Maersk A/S.  Transocean's patents are legitimately contested.  And, the fact that one court has recently ruled favorable to Transocean on one or more apparatus claims does not resolve the challenges that Maersk USA makes that nothing was invented by Transocean's several patents.

Moreover, the fact that Maersk A/S modified its rig in the face of past and current litigations means that willfulness is defeated even if Maersk A/S copied Transocean's patent design.  *See SRI Intern, Inc.* 127 F3d 1464.  Article 15.12 of the Maersk USA/Statoil Contract provides:  "Notwithstanding the foregoing…[Statoil] accepts that if intellectual property rights pertaining to Transocean's US patents…are determined…to be infringed…its [the rig's] use may be altered." It is apparent that Maersk A/S met with its engineers and perhaps Statoil when it became apparent that Transocean's patents would be sustained in order to avoid infringement. The Contract permitted alterations and the changes were incorporated.  *See Read Corp.* 970 F.2d at 828.

## B.

Resolution of the issue regarding the manufacture of the DSS-21, however, does not resolve the issue of whether Maersk USA offered to sell or sold infringing technology by way of the Statoil Contract.  In this regard, Transocean argues that: (a) the Contract between Maersk USA and Statoil was negotiated and consummated in the United States; and, (b) Maersk USA's

use of the DSS-21 in the Gulf of Mexico to fulfill its contractual obligations with Statoil will constitute infringement.

Maersk USA argues that Transocean has not met its burden on willfulness by clear and convincing evidence that the Contract constitutes a willful "offer to sell" an infringing product. *See* Safeco, 127 S.Ct. at 2215. Maersk USA argues that this is so because it acted objectively reasonable in the manner that it contracted with Statoil. In fact, it argues that it was cautious, anticipating the possibility that Transocean's patents could be held valid. Along these lines, Maersk USA asserts it took a position with regard to the DSS-21 that was consistent with the court's ruling in the Transocean/GSF litigation. In that litigation, the presiding judge held that modification to an infringing rig rendered it non-infringing. Hence, Maersk USA argues, the facts and ruling in that litigation negates the existence of "objective recklessness" on its part.

Maersk USA also argues that simply entering into an *executory* contract is not an act of infringement. First, it is non-infringing because Transocean's pleadings fail to allege the infringing item. In its pleadings Transocean alleges that it notified Maersk USA of its infringing activities. However, Maersk USA points out that Transocean's pleadings are lacking in allegations of any notice or alleged infringing conduct. Maersk points out that Transocean's Second Amended Complaint fails to assert sufficient facts constituting a claim for willfulness under an "offer to sell" theory. Transocean disputes this claim. Nevertheless, Maersk USA asserts, contrary to Transocean's argument, the Contract between Maersk USA and Statoil provides for unilateral changes in the DSS-21 to avoid infringement. Equally, Maersk USA argues, Transocean's "offer to sell" infringement theories were dropped from its case. Finally, Maersk USA argues that Transocean's pleadings fail to identify a single infringing activity that has taken place in the United States.

The Court is of the opinion that Maersk USA's act of contracting with Statoil in the manner and place that it did does not constitute an act of willful infringement. The undisputed evidence shows that Maersk Drilling submitted its bid package to Statoil ASA's Norwegian office and that the Contract was executed in Stravanger, Norway. The evidence also shows that the DSS-21 is capable of modification and was, in fact, modified in a manner that makes it non-infringing, pursuant to the court's ruling in the Transocean/GSF litigation. Although Maersk A/S constructed the DSS-21 that, arguably, infringes Transocean's patents, subsequent modifications to the rig's auxiliary drill center removes any basis for a finding of willfulness on Maersk USA's part even though grounds remain upon which arguments of infringement may rest.

Transocean does not refute the fact that Maersk A/S made modifications to the DSS-21. Instead, it argues that Maersk USA's willfulness is established by the fact that it was aware of Transocean's patents-in-suit prior to entering into the Maersk USA/Statoil Contract. As well, Transocean argues, Maersk USA knew that Maersk A/S copied Transocean's design. Maersk USA then contracted with Statoil to utilize the DSS-21 in the Gulf of Mexico, all in the face of the Transocean/GSF litigation and direct communications from Transocean to Maersk USA concerning its conduct.

The copying of another's patented technology alone may constitute the requisite level of intent to constitute willful infringement. *See GSI Group, Inc. v. Sukup Mfg. Co.,* 591 F.3d Supp. 2d 977 (C.D. Ill. 2008). However, here there is no evidence of any act of infringement occurring in the United States. *See* § 271(a); *Rotec Indus., Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1254 (Fed. Cir. 2000). The alleged act of infringement, an offer to sell an infringing rig in the United States, is not supported by the terms of the Contract. In fact, the terms of the Contract permit modifications to the rig that would make the rig non-infringing. Hence, the fact that Maersk A/S

copied Transocean's patents, if it did, does not advance Transocean's claim of willfulness against Maersk USA because the rig was modified.  *See Hilgraeve Corp. v. Symantic Corp.*, 265 F.3rd 1336, 1343, (Fed. Cir. 2001)(citing to *High Tech Med. Instrumentation, Inc. v New Image Indus., Inc.,* 49 F.3rd 1551, 1556 (Fed. Cir. 1995).

It is Ordered that Maersk's motion for summary judgment of no willfulness is GRANTED in all respects.

SIGNED and ENTERED this 14th day of May, 2009.

_____
Kenneth M. Hoyt
United States District Judge