UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.,** | § § § | |
| *Plaintiff/Counter-Defendant,* | § § | Case No. H-07-02392 |
| v. | § § | JUDGE KENNETH M. HOYT |
| **MAERSK CONTRACTORS USA, INC.,** | § § § | |
| *Defendant/Counter-Plaintiff.* | § | |

**MEMORANDUM IN SUPPORT OF
MAERSK'S MOTION FOR ATTORNEY'S FEES**

Maersk respectfully requests that this Court find this case exceptional and award Maersk its reasonable attorney's fees pursuant 35 U.S.C. § 285. This case is exceptional because Transocean pressed its infringement allegations even after it learned that the accused Maersk Developer included a permanent casing sleeve and therefore could not infringe because of the rulings entered by Judge Lake in a prior case involving the same patents. *Transocean v. GlobalSantaFe*, No. 03-2910 (hereinafter "*GSF*"). In the *GSF* case, Judge Lake expressly ruled that a rig with a permanently installed casing sleeve "avoid[ed] infringement of Transocean's apparatus claims," because it does not meet the "to the seabed claim element." The Maersk rig has a permanently installed casing sleeve. Maersk provided evidentiary proof of that casing sleeve to Transocean on December 3, 2007 and specifically identified this as a basis for non-infringement in its non-infringement contentions served on January 22, 2008. A well-intentioned plaintiff would have dismissed this case immediately, but Transocean did not. Transocean's decision to press its infringement allegations for another 18 months – without any

rational, good-faith basis for doing so – makes this case exceptional and justifies an award of attorney's fees.

I.     **BACKGROUND**

    A.     **Judge Lake Ruled That The Addition Of A Permanent Casing Sleeve Avoided Infringement**

In the *GSF* case, Transocean asserted the same four patents at issue in this case against GSF. GSF's rigs were found to infringe and the patents were not found invalid. To avoid a permanent injunction, GSF agreed to modify its rigs by adding a casing sleeve to one of the two drill centers on each rig. The casing sleeve is a hollow metal pipe that has a sealed bottom. When placed in the rotary of the drill center, it prevents that drill center from being able to advance tubulars into the water and to the seabed. A circular plate was also added to the exterior of the casing sleeve, below the rotary. This circular plate prevented removal of the casing sleeve from the rotary.

Judge Lake ruled that the casing sleeve with a circular plate welded to the outside of the casing sleeve avoided infringement:

> Transocean's inventor, Ray, characterized the ability of the second or auxiliary drill center to go to the seabed as an essential feature of Transocean's invention. The court concludes that when taken together the Ray testimony and the McCulloch testimony [GSF's witness] on which both parties rely show that both parties agree that structural modification effected by the **addition of a casing sleeve to the second or auxiliary drill center can be used to avoid future infringement of Transocean's apparatus claims** without substantially impacting GSF's ability . . . to practice the prior art of off-line stand building. Accordingly, the court is . . . persuaded that the permanent injunction should require GSF to implement the structural modifications described by McCulloch that **both parties agree would prevent future infringement with minima**l disruption to GSF's ability. . . to practice the prior art.

(Ex. 1, p. 24) (emphasis added).

On January 19, 2007, Judge Lake entered a Modified Final Judgment which provided that:

> GlobalSantaFe shall modify the Development Drillers I and II to prevent tubulars from being advanced into the water to the seabed through the auxiliary well center . . . . Specifically, GlobalSantaFe shall **attach a casing sleeve with a solid bottom to the rotary table of the auxiliary well center. GlobalSantaFe shall weld a circular plate to the casing sleeve to inhibit it from being removed from the rotary table.**

(Ex. 2, p. 2) (emphasis added).

### B.   The Maersk Developer Has The Casing Sleeve Specified By Judge Lake

Maersk availed itself of the safe harbor created by Judge Lake's ruling and installed a permanent casing sleeve in the second rotary of the Maersk Developer. The casing sleeve has a solid bottom and a circular plate is welded to the outside of the casing sleeve to inhibit it from being removed from the rotary table – just as specified by Judge Lake (Ex. 3).

### C.   Transocean Pursued Baseless Infringement Allegations

Transocean filed its Complaint against Maersk on July 24, 2007 and served its Preliminary Infringement contentions on November 8, 2007. Maersk was surprised to learn that Transocean's entire case was premised on an old, draft Maersk marketing brochure that did not show the casing sleeve (Ex. 4).

On November 26, 2007, Maersk informed Transocean that the rig that was under construction (subsequently named "Maersk Developer") was materially different from the rig shown in the draft brochure. (Ex. 5, pp. 3-4). On December 3, 2007, Maersk provided Transocean with detailed blueprints that showed a permanently installed casing sleeve on the second advancing station (Ex. 6). On January 22, 2008, Maersk provided Transocean with Maersk's non-infringement contentions and spelled out – even though it was already abundantly

clear from the drawings – that the rig Maersk was building in Singapore had a permanently installed casing sleeve that precluded infringement of the Transocean patents (Ex. 7).

Transocean's response was to proceed as if the casing sleeve did not exist. Transocean did not drop the case, amend its infringement contentions or explain how a rig with a permanently installed casing sleeve could possibly infringe its patents. Transocean did not even mention the casing sleeve in its Final Infringement Contentions, interrogatory responses or its expert reports. (*See, e.g.,* Ex. 8). To the contrary, on March 24, 2008, Transocean filed a motion for summary judgment of infringement, again without even acknowledging the casing sleeve (Dkt. No. 114).

In its motion for summary judgment of non-infringement, Maersk proved that the Maersk casing sleeve is configured to be identical in all material respects to the non-infringing casing sleeve set forth in Judge Lake's ruling (Dkt. No. 115). Transocean did not provide any evidence or argument to the contrary (Dkt. No. 127), and this Court granted summary judgment of non-infringement on July 28, 2009 (Dkt. No. 148).[1]

## II.   ARGUMENT

### A.   Legal Standard

Under 35 U.S.C. § 285, this Court "may award reasonable attorney fees to the prevailing party" in an "exceptional case." The purpose of § 285 is to "compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Automated Bus. Cos. v. NEC Am.,*

---

[1] The non-infringement ruling addressed only the apparatus claims. Transocean's method claims do not provide a good faith basis for this lawsuit either. Transocean dropped the method claims in the midst of summary judgment briefing, implicitly conceding that there was no basis for arguing that Maersk infringed the method claims. Also, the method claims, like the apparatus claims, require the ability to advance tubulars to the seabed with both advancing stations. In its summary judgment ruling, this Court expressly found that the Maersk Developer is not capable of advancing tubulars to the seabed with both advancing stations. (Dkt. 148).

*Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000). "In addition, § 285 serves as a deterrent to improper bringing of clearly unwarranted suits for patent infringement." *Id*.

### B. Maersk is the "Prevailing Party" Under Section 285

Maersk proved that all of the asserted claims are not infringed and invalid. Thus, Maersk is the "prevailing party."

### C. This Case is Exceptional Because Transocean Maintained a Baseless Lawsuit Against a Rig That It Knew To Be Non-Infringing

Transocean had <u>no reasonable basis</u> for continuing this lawsuit after it learned that the accused Maersk Developer included a casing sleeve in compliance with Judge Lake's injunction ruling in the *GSF* case. The maintenance of a frivolous or baseless lawsuit renders the case "exceptional" under § 285. *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246-47 (Fed. Cir. 2004). If facts or circumstances arise during the pursuit of an infringement claim that call the merits of the case into question, the patentee must reconsider continuing the litigation. *Id*. Failure to withdraw an infringement claim in light of circumstances that indicate that infringement is precluded is grounds for finding the case "exceptional" under § 285. *Id.*; *Automated*, 202 F.3d at 1355-56.

In *Phonometrics*, the patentee charged various parties with infringement of its patent in multiple co-pending suits. 350 F.3d at 1243. In one of the cases, the district court and the Federal Circuit finalized a claim construction ruling during the pendency of the subject litigation. *Id*. at 1244-45. That ruling was fatal to patentee's infringement position in the subject litigation. *Id*. at 1245. Despite the fatal claim construction, the patentee continued to press its infringement allegations. *Id*. Unsurprisingly, those claims were dismissed on a motion for summary judgment of non-infringement. *Id*. The accused infringer then brought a motion for

attorney fees under § 285. *Id*. The district court granted the motion and found the case exceptional because the claim construction ruling in the related case made it clear that the accused device in the subject case could not infringe the claims. *Id*. The Federal Circuit affirmed this award as not being an abuse of discretion. *Id*. at 1246 ("When the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence.").

Similarly, in *Automated Business*, the patentee brought an infringement suit alleging infringement of its patent based on the defendant offering for sale, manufacturing, and selling allegedly infringing facsimile machines. 202 F.3d at 1354. The ability to distinguish between voice and fax calls was a "critical limitation" of the claims. *Id*. The patentee based its infringement allegations on a description of the defendant's product in a product specification guide. *Id*. The guide indicated that the accused devices had the capability to distinguish between voice and fax calls. *Id*. However, after the suit was filed, the accused infringer demonstrated that the information in the guide was incorrect and the accused devices did not have the ability to distinguish between voice and fax calls. *Id*. Therefore, the accused devices could not infringe the claims. *Id*. Plaintiff refused to drop the suit, so defendant moved for summary judgment of non-infringement, which the court granted. *Id*. Defendant then filed a motion for fees under § 285. *Id*. The court found that the circumstances demonstrated that the case was exceptional and justified an award of fees to the defendant. *Automated Bus. Cos. v. NEC Am., Inc.*, 1999 U.S. Dist. LEXIS 20962, *11 (N.D. Tex. Feb. 8, 1999) (Ex. 9). The soundness of this ruling is so clear that it was not even challenged on appeal. 202 F.3d at 1355

(noting that the patent owner appealed the amount of fees, but not the underlying ruling that the case was exceptional).

Here, like the patentees in *Phonometrics* and *Automated Business*, Transocean had no reasonable basis for pressing its infringement allegations after it learned during litigation that it would be unable to prove infringement. Just like the court ruling from a related case in *Phonometrics*, Judge Lake's injunction ruling in the GSF case made it clear that Transocean could not prove infringement of a rig with a casing sleeve that is permanently installed in the second rotary. Transocean, like the patentee in *Phonometrics,* stubbornly ignored the fatal court rulings and continued to press its infringement claims. Similarly, both Transocean here and the patentee in *Automated Business* pressed their infringement claims in the face of confirmation from the accused infringers that the accused products did not operate in the manner assumed by the patentee when the suit was filed. Rather, the products actually operated in a non-infringing manner that did not allow them to meet a "critical limitation" of the claims. The patentees in *Phonometrics* and *Automated Business* were held liable for the accused infringers' reasonable fees under § 285 for improper continuance of an infringement suit. So should Transocean.

### D. The Court Should Award Reasonable Fees

The Court should award reasonable attorney fees to Maersk. Transocean had no reasonable basis for pressing its infringement allegations after it learned that the accused Maersk Developer included a casing sleeve in compliance with Judge Lake's injunction ruling in the GSF case. A well-intentioned plaintiff would have dismissed the case immediately, but Transocean did not. Courts confronted with similar decisions by patentees to continue baseless suits have exercised their discretion to award reasonable fees to the accused infringer. *See Phonometrics*, 350 F.3d at 1248; *Automated*, 1999 U.S. Dist. LEXIS at *11. Awarding

reasonable fees in this situation effectuates the purposes of § 285 by compensating wrongfully pursued defendants and deterring patentees from bringing or maintaining clearly unwarranted suits. *See Automated*, 202 F.3d at 1355. Here, as a result of Transocean's actions, Maersk was forced to spend millions of dollars in fees and costs defending against Transocean's meritless infringement allegations. These expenses should be reimbursed under § 285.

### E. Maersk Is Entitled to Attorney's Fees Expended in Opposing Infringement

Maersk is entitled to recover its attorney's fees that are attributable to fighting Transocean's baseless infringement allegations from the time it demonstrated to Transocean that the Maersk Developer had a permanent casing sleeve (January 22, 2008) to the date this Court granted Maersk's motion for summary judgment of non-infringement (July 28, 2009). Maersk's total fees during that time were approximately $4.3 million. However, recognizing that a portion of these fees is attributable to Maersk's successful validity challenge, Maersk is only requesting that the Court award 50% of its total fees. Accordingly, Maersk requests attorney's fees of $2.15 million.

## III. CONCLUSION

For the foregoing reasons, Maersk's request for attorney fees should be granted.

| | |
|---|---|
| Submitted September 1, 2009 |    /s/ Lee L. Kaplan<br>ATTORNEYS FOR<br>MAERSK CONTRACTORS USA, INC.<br><br>Lee L. Kaplan<br>Attorney-in-Charge<br>Texas Bar. No. 1109400<br>Southern District of Texas ID No. 1840<br>Jeff Potts<br>Texas Bar No. 00784781<br>Southern District of Texas ID No. 16804<br><br>SMYSER KAPLAN & VESELKA, L.L.P.<br>Bank of America Center<br>700 Louisiana Street<br>Houston, Texas 77002-2700<br>713-221-2300 (phone)<br>713-221-2320 (facsimile)<br>lkaplan@skv.com<br>jpotts@skv.com<br><br>Admitted *Pro Hac Vice*:<br><br>William H. Frankel<br>(Illinois State Bar No.: 3127933)<br>Glen P. Belvis<br>(Illinois State Bar No.: 6191444)<br>Mark H. Remus<br>(Illinois State Bar No.: 6243717)<br>David P. Lindner<br>(Illinois State Bar No.: 6283382)<br><br>BRINKS HOFER GILSON & LIONE<br>NBC Tower, Suite 3600<br>455 North Cityfront Plaza Drive<br>Chicago, Illinois 60611-5599<br>312-321-4200 (phone)<br>312-321-4299 (facsimile)<br>wfrankel@brinkshofer.com<br>gbelvis@brinkshofer.com<br>mremus@brinkhofer.com<br>dlindner@brinkshofer.com |

## **CERTIFICATE OF SERVICE**

  I hereby certify that on September 1, 2009, a true and correct copy of Memorandum in Support of Maersk's Motion for Attorney's Fees was served to the following attorneys of record by e-mail:

  Charles B. Walker
  FULBRIGHT & JAWORSKI
  1301 McKinney – Ste. 5100
  Houston, TX  77010-3095
  cwalker@fulbright.com

  *ATTORNEY FOR PLAINTIFF/COUNTER-DEFENDANT*

             /s/ Lee L. Kaplan
             Lee L. Kaplan