UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., | § § § | |
| *Plaintiff/Counter-Defendant,* | § § | Case No.:  H-07-02392 |
| v. | § § | Judge Kenneth M. Hoyt |
| MAERSK DRILLING USA, INC., | § § | |
| *Defendant/Counter-Plaintiff.* | § § § § | |

## MAERSK DRILLING USA, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF NON-INFRINGEMENT

Lee L. Kaplan
Attorney-in-Charge
Texas Bar. No. 11094400
Southern District of Texas ID No. 1840

SMYSER KAPLAN & VESELKA, L.L.P.
Bank of America Center
700 Louisiana Street
Houston, Texas 77002-2700
713-221-2300 (phone)
713-221-2320 (facsimile)
lkaplan@skv.com

Admitted Pro Hac Vice:
William H. Frankel
(Illinois State Bar No.: 3127933)
Mark H. Remus
(Illinois State Bar No.: 6243717)
David H. Bluestone
(Illinois State Bar No. 6269436)
David P. Lindner
(Illinois State Bar No.: 6283382)

BRINKS HOFER GILSON & LIONE
NBC Tower, Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois 60611-5599
312-321-4200 (phone)
312-321-4299 (facsimile)
wfrankel@brinkshofer.com
mremus@brinkshofer.com
dbluestone@brinkshofer.com
dlindner@brinkshofer.com

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ........................................................................iii

INTRODUCTION .........................................................................................1

ARGUMENT .................................................................................................2

  I.   GOVERNING LAW...........................................................................2

       A. Standard for Motions for Judgment as a Matter of Law. ............2

       B. Interpretation of Contracts is a Question of Law for the Court. ..................2

       C. Standards for Proving Infringement. .............................................3

  II.  TRANSOCEAN'S SOUGHT REMEDY IS NOT AUTHORIZED BY THE PATENT STATUTE .......................................................................5

       A. "Offers For Use" And "Contracts For Use" Are Not Infringing Acts. ...........5

       B. The Statoil Contract Does Not Include Any Transfer of Possession Pursuant to the Statoil Contract. ..................................7

       C. The Federal Circuit Never Provided A Ruling On Whether The Statoil Contract Was An Offer For Sale or Sale...............................9

  III. TRANSOCEAN FAILED TO PROVE ALL OF THE ELEMENTS OF THE CLAIMS IN THE STATOIL CONTRACT ...................................9

       A. The Statoil Contract Is A Fully Integrated Document...............10

       B. No Infringement Exists Under The Statoil Contract Because Other Features Were Irrelevant to Performance of the Statoil Contract And Expressly Subject To Modification.......................................11

  IV. MAERSK DID NOT OFFER AN INFRINGING RIG .......................12

  V.   TRANSOCEAN FAILED TO PROVE ALL OF THE ELEMENTS OF THE CLAIMS ....................................................................................13

       A. Transocean Failed to Prove All of The Elements of Claim 17 of the '069 Patent.....................................................................................13

B. Transocean Failed to Conduct a Means-Plus-Function Analysis or
    Identify All of The Elements of Claim 13 of the '781 Patent......................14

CONCLUSION.................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Aresment v. Spinnaker Exploration Co., LLC,*
  400 F.3d 238 (5th Cir. 2005) ...................................................................... 2

*Bellows v. Amoco Oil. Co.,*
  118 F.3d 268 (5th Cir. 1997) ...................................................................... 2

*Chiuminatta Concrete Concepts v. Cardinal Indus.,*
  145 F.3d 1303 (Fed. Cir. 1998) .................................................................. 5

*City of Aurora, Colo. ex rel. Aurora Water v. PS Systems, Inc.,*
  720 F. Supp. 2d 1243 (D. Co. 2010) ........................................................ 11

*Corning Glass Works v. Sumitomo Elec. USA, Inc.,*
  868 F.2d 1251 (Fed. Cir. 1989) ........................................................... 4, 13

*Cross Med. Prods., Inc., v. Medtronic Sofamor Danek, Inc.,*
  424 F.3d 1293 (Fed. Cir. 2005) .................................................................. 3

*D.E.W., Inc. v. Local 93 Laborers' Int'l Union of N. Am.,*
  957 F.2d 196 (5th Cir. 1992) ...................................................................... 2

*FieldTurf Intern., Inc. v. Sprinturf, Inc.,*
  433 F.3d 1366 (Fed. Cir. 2006) ............................................................ 5, 12

*Germeyer v. HFG Eng'g US Inc.,*
  2010 U.S. Dist. LEXIS 99461, at *8 (S.D. Tex. Sept. 22, 2010) ............ 2, 7

*Harris Corp. v. Ericsson Inc.,*
  417 F.3d 1241 (Fed. Cir. 2005) .................................................................. 2

*Tex. v. Am. Tobacco Co.,*
  463 F.3d 399 (5th Cir. 2006) .................................................................... 10

*Transocean Offshore Deepwater Drilling Inc. v. Stena Drilling Ltd.,*
  2008 WL 2065808 (S.D. Tex. May 13, 2008) ......................................... 3, 7

*Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.,*
  659 F. Supp. 2d 790 (S.D. Tex. 2009) .................................................... 4, 7

*Tremont LLC v. Halliburton Energy Srvcs., Inc.,*
  696 F. Supp. 2d 741 (S.D. Tex. 2010) .................................................. 9, 10

*USA Payments, Inc. v. Hotel Ramada,*
  2001 WL 764923 at *1 (N.D. Cal. June 21, 2001) .............................. 3, 5, 6

*Weisgram v. Marley Co.*,
  528 U.S. 440 (2000) ................................................................................................2

## INTRODUCTION

Maersk is entitled to judgment as a matter of law of non-infringement pursuant to Federal Rule of Civil Procedure Rule 50(a)(1) for at least the following reasons:

- Transocean seeks a remedy that is not authorized by the Patent Statute – There is no preclusion for offers for use or contracts for future use;

- The Statoil drilling services contract ("Statoil Contract") does not constitute an offer for sale or sale because there is no transfer of property under its terms;

- The Statoil Contract is a fully integrated legal document that includes all of the performance terms – The elements of the asserted claims cannot be found in the Statoil Contract;

- The Statoil Contract includes an express reservation of rights to alter the design or use of the rig before it was delivered for operation in the Gulf of Mexico, and thus cannot constitute an infringement;

- The Statoil Contract definitively demonstrates Maersk's intent to use a non-infringing rig in the Gulf of Mexico;

- Transocean cannot use the separate contract with Kepel FELS contract to prove infringement concerning the contract with Statoil; and

- Even if Transocean uses the Kepel FELS contract instead, it failed to prove infringement by identifying all of the elements of the claims in that contract.

The interpretation of the subject at issue here, the Statoil Contract, is a question of law for the Court.  Maersk respectfully submits that a review of the Statoil Contract will demonstrate that Transocean has no remedy under the Patent Statute. Nonetheless, no reasonable jury could find infringement for Transocean.

**ARGUMENT**

**I. GOVERNING LAW**

    **A. Standard for Motions for Judgment as a Matter of Law.**

Judgment as a matter of law is applicable if "the Court finds that a reasonable jury would not have a legally sufficient basis" to find for the nonmovant. Fed. R. Civ. P. 50(a)(1). "JMOL is proper when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable jurors could not arrive at a contrary verdict." *Aresment v. Spinnaker Exploration Co., LLC*, 400 F.3d 238, 248-49 (5th Cir. 2005); *see also Harris Corp. v. Ericsson Inc.,* 417 F.3d 1241, 1248 (Fed. Cir. 2005) (citing *Bellows v. Amoco Oil. Co.*, 118 F.3d 268 (5th Cir. 1997)). A movant is entitled to JMOL if the non-movant fails to make a showing on an essential element of its case upon which it bears the burden of proof. *See Weisgram v. Marley Co.,* 528 U.S. 440, 448 (2000) ("[Rule 50(a)] allows the trial court to remove cases or issues from the jury's consideration when facts are sufficiently clear that the law requires a particular result.") (internal quotation marks and citation omitted).

    **B. Interpretation of Contracts is a Question of Law for the Court.**

"Contract interpretation is a question of law." *Germeyer v. HFG Eng'g US Inc.*, No. H-09-1973, 2010 U.S. Dist. LEXIS 99461, at *8 (S.D. Tex. Sept. 22, 2010) (Hoyt, J.) (citing *D.E.W., Inc. v. Local 93 Laborers' Int'l Union of N. Am.*, 957 F.2d 196, 199 (5th Cir. 1992))(attached as Ex. 3). Thus, it is an issue for the Court, not a question of fact for the jury.

**C.      Standards for Proving Infringement.**

Transocean bears the burden of proving infringement by a preponderance of the evidence. *See Cross Med. Prods., Inc., v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).  Transocean's only remaining infringement contention is a purported offer for sale or sale due to entry in the Statoil drilling services contract.

**1.      Offer for Use Is Not An Infringing Act.**

The Patent Statute states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent."  35 U.S.C. § 271(a).  An offer to use a purportedly infringing product is not an act of infringement.  *USA Payments, Inc. v. Hotel Ramada,* 2001 WL 764923 at *3 (N.D. Cal. June 21, 2001)(attached as Ex. 1).

**2.      Transocean Must Prove That The Drilling Contract Provided Statoil With "Possession and Use."**

The Southern District of Texas has analyzed whether a drilling services contract constitutes an "offer to sell" the drilling rig described in a drilling services contract.  Judge Hughes found that such a contract does not constitute a sale in *Transocean Offshore Deepwater Drilling Inc. v. Stena Drilling Ltd.*, No. 07-2797, 2008 WL 2065808, at *1 (S.D. Tex. May 13, 2008) (*Stena I*) (attached hereto as Ex. 2).  Judge Hughes held that a drilling services contract is not a sale or offer for sale because the oil company, *e.g.*, Statoil, never has an interest in or possession of the

3

equipment owned by the drilling contractor, *e.g.*, Maersk.  *Id.*  Judge Hughes dismissed the complaint.  *Id.*

In the context of a different motion to dismiss on the pleadings, Judge Rosenthal observed that pleadings alleged that the contract provided the oil company with the right to "possess and use" the accused rig.  *Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.*, 659 F. Supp. 2d 790, 799-800 (S.D. Tex. 2009) (*Stena II*).  Taking the factual allegations as true, Judge Rosenthal ruled that the pleadings plausibly alleged that the oil contractor "offer[ed] to sell" the accused rig, and denied the accused infringer's motion to dismiss.  *Id.* at 801.  Judge Rosenthal never reached the merits of the legal question of whether a drilling services contract does in fact constitute a sale of the rig.  *Id.*

To be actionable, as an offer for sale or sale, the Statoil drilling services contract must at least provide Statoil with the right to possess and use the Maersk Developer.  *Stena II*, 659 F. Supp. 2d at 799-800.  Because it is a question of contract interpretation, this is a question of law for the Court to decide.

### 3. Proving Infringement Requires Analysis of Each and Every Claim Element.

To prove infringement, Transocean is required to establish that each and every element of the claims is found in the accused product (here, the Statoil Contract).  *Corning Glass Works v. Sumitomo Elec. USA, Inc.*, 868 F.2d 1251, 1259 (Fed.  Cir. 1989)  For means-plus-function claim elements, Transocean must prove both (1) the accused device performs the identical function; and (2) the accused device includes equivalent structure to the structure disclosed in the specification

4

for performing that function.  *Chiuminatta Concrete Concepts v. Cardinal Indus.*,
145 F.3d 1303, 1308 (Fed. Cir. 1998).

### 4.    Intent Is Relevant In An Offer for Sale Analysis.

Where there has been a product that was offered for sale, the parties' intent
to what would be delivered is relevant.  *FieldTurf Intern., Inc. v. Sprinturf, Inc.*, 433
F.3d 1366, 1370 (Fed. Cir. 2006).  In *FieldTurf*, the buyer solicited offers by issuing
a request for proposals ("RFP").  *Id.*  The RFP specified that the offer must conform
to a particular product that was covered by the patents-in-suit.  *Id.*  The accused
infringer communicated to the buyer that it would supply a non-infringing product
even though its offer contained the required statement that the product conformed
with the specifications in RFP.  *Id.*  Based on the "undisputed facts and considering
all of the circumstances," the Federal Circuit held that the accused infringer had
not offered to sell an infringing product under 271(a).  *Id.* at 1370.

## II.   TRANSOCEAN'S SOUGHT REMEDY IS NOT AUTHORIZED BY THE PATENT STATUTE

### A.    "Offers For Use" And "Contracts For Use" Are Not Infringing Acts.

Transocean's only remaining infringement allegation is based on the entry of
the Statoil drilling services contract.  Like the plaintiff in *USA Payments, Inc. v.
Hotel Ramada,* Transocean wrongly tries to dress up an unactionable "offer for use"
as an "offer for sale or sale" in the United States.  (Dkt. 1, ¶ 16.)

In *USA Payments*, the alleged infringing products were ATM machines in use
in Nevada; the accused acts of infringements were advertisements purportedly

soliciting their use in California.  2001 WL 764923 at *1 (Ex. 1).  In an attempt to create cause of action, the plaintiff "creatively argue[d]" that the advertisements "offers to sell" its services to residents of California." *Id.* at *2.  The Court rejected this argument, holding:

> An offer to use an allegedly infringing product, by itself, does not constitute patent infringement. *See* 35 U.S.C. § 271. As a result, such promotional efforts by defendant cannot serve as the basis for its claims against defendant.

*Id.* at *3.

In this case, the Statoil contract provides for Maersk to use its own rig to conduct drilling operations for Statoil on Statoil's leased property.  (DTX 186.)   The contract cannot itself be a "use."  This is not an actionable infringement under the Patent Statute.  35 U.S.C. § 271(a).

Transocean contends that the entry into a drilling services contract is both "an offer for sale" and a "sale" of the Maersk Developer.  The Statoil contract is for drilling services, not a sale of the Maersk Developer to Statoil.  (PTX 186.)   As Judge Hughes has already explained:

> Transocean has characterized the drilling contract as a sale. It is not. Whether the contract is for years or for a number of wells, the oil operator never has an interest in or possession of the drilling contractor's equipment. Transocean says that this long-term arrangement is the functional equivalent of a sale. It might be arguable that a bailment of the useful life of the equipment is parallel to a sale, but Congress did not say that offers of transactions similar to or in substitute of a sale were covered. Maybe it should have, but it did not.

*Stena I,* 2008 WL 2065808, at *1.

**B.    The Statoil Contract Does Not Include Any Transfer of Possession Pursuant to the Statoil Contract.**

To constitute an offer for sale or sale, Transocean must at least demonstrate that that Statoil acquired "possession and use" *Stena II*, 659 F. Supp. 2d at 799-800. This is matter of contract interpretation for the Court.  *See Germeyer*, 2010 U.S. Dist. LEXIS 99461, at *8.

Transocean cannot demonstrate any transfer of possession of the Maersk Developer from Maersk to Statoil, either upon entry of the contract or upon performance pursuant to its terms.  There is no violation of the statute.

On December 18, 2006, Maersk and Statoil Gulf of Mexico LLC executed a contract for drilling services.[1] (DTX 186; Trial Tr. at 623:9-15.)  The Statoil Contract requires Maersk to "perform the Drilling Services as set forth in Exhibit A" using a drilling rig that subsequently was named Maersk Developer.  (*Id.*, M001835, Art. 4.1.)[2]  The Statoil Contract specifies that the "overall performance of the work, and the management and direction of the Drilling Unit [*i.e.*, Maersk Developer] **shall be the sole responsibility of [Maersk]**."  (*Id.*, M001836, Art. 4.3 (emphasis added); *see also* Trial Tr. at 625:21-626:12).

Following is a representative list of Maersk's obligations under the Contract with respect to the drilling services to be provided to Statoil:

---

[1] The drilling services contract was signed on December 18, 2006 (*see* DTX 186, M001871), but the contract was entered into on November 22, 2006 (*see id.*, M001830, ¶ 1).

[2] The Maersk Developer was under construction in Singapore at the time of the Statoil contract.

- Maersk must provide drilling services including drilling, completion, and intervention work with the rig.  (DTX 186, M001874, § 2.1.)

- Maersk must provide the rig, equipment, material, consumables and services required to perform the drilling services.  (*Id.*, M001874, § 3.1.)

- Maersk shall provide and maintain the rig in good working order and in a safe and fully operational condition.  (*Id.*, M001875, § 3.2.)

- Maersk is responsible for the performance of the drilling services and the management and direction the rig.  (Ex. 1, M001836, Art. 4.3.)

- In the event that the Contract is cancelled, Maersk is entitled to use the rig to perform drilling services for another.  (*Id.*, M001843, Art. 9.2.)

- Maersk is required to insure the rig "owned or chartered by [Maersk] and utilized in the performance of [Statoil] Contract in an amount equal to the declared value" of the rig.  (*Id.*, M001859, Art. 16.1§ (f).)

- Maersk shall provide competent personnel, and replace personnel that compromise the safety of the rig or are detrimental to providing the drilling services.  (*Id.*, M001839, Arts. 6.1, 6.2, and 6.4.)

Under the Statoil Contract, Statoil never owns or controls the Maersk Developer, nor does it have an interest in or possession of the Maersk Developer.  At all times, ownership and control of Maersk Developer is solely in the hands of Maersk.  Transocean's own expert witness admits that "ownership and control of the rig never transfers to Statoil."  (Trial Tr. at 626:10-15.)

There can be no violation of the Patent Statute through the entry of the contract because there is simply no sale or offer for sale.  (Trial Tr. at 626:16-18.)  It is a contract for services.  Neither an offer for use nor a contract for use constitutes an infringing act under the Patent Statute.  35 U.S.C. § 271(a); *see also USA Payments,* 2001 WL 764923 at *3.

### C.    The Federal Circuit Never Provided A Ruling On Whether The Statoil Contract Was An Offer For Sale or Sale.

The Federal Circuit erroneously stated in dicta, "there is no dispute that there was an offer to sell in this case." (Fed. Cir. Opinion, at 1308.)  There was and always has been such a dispute.  Due to this error, the Federal Circuit never provided a ruling.

Transocean itself has noted, the law of the case doctrine does not apply to dicta.  (Dkt. 198, Transocean Response to Maersk's Motion to Preclude, at 15 (Pg. 20).)  As Transocean stated, if the determination was "neither essential nor necessary for the Federal Circuit to decide . . . in order to reverse this Court's grant of summary judgment," the law of the case doctrine does not apply.  (*Id.*)  The Federal Circuit addressed only on extraterritoriality issues regarding an offer for sale or sale.  It never substantively addressed the offer for sale dispute because it erroneously believed that it was not in dispute.  The Court is free to rule on this issue.

### III.    TRANSOCEAN FAILED TO PROVE ALL OF THE ELEMENTS OF THE CLAIMS IN THE STATOIL CONTRACT

Even if the Court were to somehow conclude that the Statoil Contract constitutes an offer for sale or sale, Transocean's infringement cause of action still fails.  Transocean has not proven that each and every element of the asserted claims can be found in the Statoil Contract.

## A.      The Statoil Contract Is A Fully Integrated Document.

The Statoil contract is a fully integrated legal document.  (DTX 186,
M001871; Trial Tr. At 628:7-13.)  All of the terms for performance are included in
that contract alone.  (*Id.*)  As such, extrinsic evidence is not properly used to
construe the contract.  *See Tremont LLC v. Halliburton Energy Srvcs., Inc.*, 696 F.
Supp. 2d 741, 840 (S.D. Tex. 2010) ("Courts interpreting unambiguous contracts are
confined to the four corners of the document, and cannot look to extrinsic evidence
to create an ambiguity." (quoting *Tex. v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th
Cir. 2006))).  As Transocean admits, "the Statoil Contract unambiguously speaks for
itself." (Dkt. No. 222, Transocean Response to Motion Regarding Maersk Developer
at 5.)  If an offer for sale or sale somehow exists by the entry of the Statoil Contract,
it is this contract alone that governs whether there is infringement.

Transocean failed to identify each and every element of the asserted claims in
that Statoil agreement.  Its technical expert barely even discussed it.  Indeed, he
admitted that the services listed in the Statoil Contract did not require the use of
"dual activity."  (Trial Tr. at 624:5-15.) Instead, Transocean sought to prove
infringement using a totally separate contract that is never referenced in the
Statoil agreement.  (Trial Tr. at 627:15-629:2.)  This extrinsic evidence is improper
and irrelevant.  *Tremont*, 696 F. Supp. 2d at 840.

The terms of the Statoil contract determine what constitutes performance
under that agreement (that is, what would have been offered for sale assuming that
a drilling services contract can be deemed an offer for sale).  Transocean's failure to

10

prove infringement through this contract entitles Maersk to judgment as a matter of law of non-infringement.

### B. No Infringement Exists Under The Statoil Contract Because Other Features Were Irrelevant to Performance of the Statoil Contract And Expressly Subject To Modification.

As a fully integrated legal document, any feature not explicitly required by the Statoil contract itself was left open, and not relevant to the performance of the contract.  Transocean improperly turns to the Kepel FELS shipbuilding contract to instead attempt to prove up infringement.  This contract was between Maersk and the shipbuilder, not Maersk and Statoil.  It has no bearing on what would be deemed performance under the Statoil agreement.

Further, Article 15.12 of the Statoil Contract explicitly gave Maersk the right to "make such alterations" to avoid the scope of Transocean's patent claims. (DTX 186, at M001855.)  The Statoil Contract specifically permitted Maersk to change the design of the rig to avoid infringing Transocean's patent.  There cannot be an offer for sale or sale of an infringing product because the contract excluded delivery of an infringing rig as a term of performance under the contract.

Another district court reached the same conclusion in *City of Aurora, Colo. ex rel. Aurora Water v. PS Systems, Inc.*, 720 F. Supp. 2d 1243 (D. Co. 2010).  In that case, a building contractor and a city entered into a contract to build a water supply and treatment system.  *Id.* at 1246.  However, the parties agreed by contract that the city had the right to alter the system pending the resolution of an on-going patent dispute related to certain aspects of the system.  *Id.* at 1246-47.  The court

concluded that the city's unilateral right to alter the system established that the parties had not mutually assented to build the portion of the system that related to the patents. *Id.* at 1251. "Until the necessary assent is given, neither side can enforce against the other" the contract term that relates to the design aspects implicating the patents. *Id.* at 1252.

Statoil could not compel Maersk to provide an infringing rig by enforcing the Contract because the parties did not mutually assent to the provision of an infringing rig. The undisputed facts establish that the Contract did not operate to transfer an infringing rig from Maersk to Statoil where Maersk reserved the right to alter the design. Thus, even if the Court holds that the Statoil Contract was an offer for sale or sale of a rig, it was not an offer for sale or sale of an infringing device as a matter of law.

## IV.    MAERSK DID NOT OFFER AN INFRINGING RIG

Transocean failed to provide any evidence that Statoil believed it was getting offered an infringing rig, or that Maersk ever intended to provide an infringing rig. To the contrary, the explicit terms of the agreement and the fact that the rig that was delivered has been ruled by the Federal Circuit and this Court not to infringe, demonstrates that no such intent can be proven or inferred.

Maersk's intent is relevant to determine what was offered for sale (assuming the drilling services contract could be deemed an infringing act). *See FieldTurf Intern., Inc. v. Sprinturf, Inc.*, 433 F.3d 1366, 1370 (Fed. Cir. 2006) (finding intent relevant to determine what was offered for sale where the defendant provided a

non-infringing product).  Maersk's intent not to sell an infringing rig is spelled out directly in the Contract.  The Court need not look further than Article 15.12 of the Contract.  Maersk's intent **at the time of the purported act of infringement** was to "make such alterations" to avoid the scope of Transocean's patent claims. (Maersk Trial Exhibit 186, at M001855.)  Maersk manifested an intent to provide a rig that did not infringe; the offer expressly recited a right to alter the rig in view of Transocean's patents.

Transocean offers no evidence that Maersk ever intended to provide an infringing rig for use for drilling on Statoil's behalf.  There is simply no infringing product subject to an offer to Statoil.

## V.     TRANSOCEAN FAILED TO PROVE ALL OF THE ELEMENTS OF THE CLAIMS

Even if all of the above reasons why Maersk cannot be liable for patent infringement did not apply, Maersk still would not infringe.  Even when referencing the Kepel FELS building contract (as opposed to the Statoil Contract that is at issue), Transocean still failed to identify all of the elements of the claims as required for infringement.  *Corning Glass Works*, 868 F.2d at 1259.

### A.     Transocean Failed to Prove All of The Elements of Claim 17 of the '069 Patent.

Claim 17 of the '069 patent requires among other things, an assembly operable to transfer tubular assemblies between a first and second tubular advancing station is *positioned adjacent to* the first and second tubular advancing stations.  Transocean attempts to read words out of the claims by failing to prove by

13

a preponderance of the evidence where this assembly is found on the accused rig design and how it is *positioned adjacent to* the required advancing stations. Because it failed to prove the existence of this element, there can be no infringement.

### B. Transocean Failed to Conduct a Means-Plus-Function Analysis or Identify All of The Elements of Claim 13 of the '781 Patent.

Claim 13 of the '781 patent, which ultimately depends from claim 10, requires a means for transferring tubular assemblies that is positioned within the drilling derrick. Transocean failed to even conduct the infringement analysis required for means-plus-function claim limitations. *See Chiuminatta Concrete Concepts v. Cardinal Indus.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998). This results in a failure to provide that the Statoil contract discloses a means for transferring for tubulars that it positioned within derrick. There can be no infringement of this claim.

### CONCLUSION

Maersk respectfully requests that the Court grant its motion for judgment as a matter of law of non-infringement of the asserted claims. Maersk further requests that the Court find that this is an exceptional case and award attorney's fees to Maersk.

Dated: April 18, 2011                   Respectfully submitted,

                                        */s/ Lee L. Kaplan*
                                        DEFENDANT/COUNTER-PLAINTIFF,
                                        MAERSK CONTRACTORS USA, INC.

Lee L. Kaplan
Attorney-in-Charge
Texas Bar. No. 11094400
Southern District of Texas ID No. 1840

SMYSER KAPLAN & VESELKA, L.L.P.
Bank of America Center
700 Louisiana Street
Houston, Texas 77002-2700
713-221-2300 (phone)
713-221-2320 (facsimile)
lkaplan@skv.com
jpotts@skv.com
Admitted *Pro Hac Vice*:
William H. Frankel
(Illinois State Bar No.: 3127933)
Mark H. Remus
(Illinois State Bar No.: 6243717)
David H. Bluestone
(Illinois State Bar No.: 6269436)
David P. Lindner
(Illinois State Bar No.: 6283382)

BRINKS HOFER GILSON & LIONE
NBC Tower, Suite 3600
455 North Cityfront Plaza Drive
Chicago, Illinois 60611-5599
312-321-4200 (phone)
312-321-4299 (facsimile)
wfrankel@brinkshofer.com
mremus@brinkshofer.com
dbluestone@brinkshofer.com
dlindner@brinkshofer.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2011, a true and correct copy of MAERSK

DRILLING USA, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW OF

NON-INFRINGEMENT was served to the following attorney of record by email:

> Charles B. Walker
> Fulbright & Jaworski
> 1301 McKinney – Ste. 5100
> Houston, TX  77010-3095
> cwalker@fulbright.com
>
> *ATTORNEY FOR PLAINTIFF/COUNTER-*
> *DEFENDANT*

> */s/Lee L. Kaplan*
> Lee L. Kaplan