UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. | § § § | |
| Plaintiff | § | |
| vs. | § § | CIVIL ACTION NO. H-07-cv-02392 |
| MAERSK CONTRACTORS USA, INC. | | |

## **INSTRUCTIONS TO THE JURY**

The following instructions were presented to the jury on the 20th day of April, 2011.

Signed this 20th day of April, 2011.

_____
KENNETH M. HOYT
UNITED STATES DISTRICT COURT

## 2.1    GENERAL JURY INSTRUCTIONS (AT CLOSE OF EVIDENCE)

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

You must answer all questions based on a preponderance of the evidence unless otherwise instructed.  A preponderance of the evidence means the evidence must persuade you that the claim is more probable than not.  You should base your decision on all of the evidence, regardless of which party presented it.

You will be asked to answer other questions based on clear and convincing evidence.  Clear and convincing evidence means the evidence that the defense is highly probable.  Such evidence requires a higher standard of proof than proof by a preponderance of the evidence.  Again, you should base your decision on all of the evidence, regardless of which party presented it.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

2

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence – such as testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

3

## 2.2    CONTENTIONS OF THE PARTIES

Transocean contends that Maersk offered to sell or sold a product that infringes Claim 13 of the '781 Patent and Claim 17 of the '069 Patent.

Maersk denies that it infringed Claims 13 of the '781 Patent and Claim 17 of the '069 Patent.  Maersk also contends that those claims are invalid.  Specifically, Maersk contends that those claims are invalid because:

- the claimed invention would have been obvious in view of the prior art; and

- the patents do not disclose sufficient information to enable one skilled in the field of the invention to make and use the claimed invention.

Invalidity is a defense to infringement.  Therefore, even though the PTO examiner has allowed Claim 13 of the '781 Patent and Claim 17 of the '069 Patent, you, the jury, must decide whether those claims are invalid.

Your job is to decide whether Claim 13 of the '781 Patent and Claim 17 of the '069 Patent have been infringed and whether any of those claims are invalid.  If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Transocean as compensation for the infringement.

*    *    *

## 2.3    CLAIM CONSTRUCTION

I have defined certain words and phrases in the patent claims.  During your deliberations you must apply these meanings:

- The terms "operable" and "operably" mean "designed."

- The term "drilling operations" means operations required to construct a well.

- The terms "derrick" and "drilling superstructure" mean "a structure for supporting drilling operations through a drill deck."

- The term "tubular advancing station" refers to "a specific area on the drilling rig where the equipment for the function for advancing tubular members occurs."

- The term "tubular handling system for transferring" and "assembly to transfer tubular assemblies between" means the "necessary equipment for moving tubular members from place-to-place within the derrick."

- The term "means for transferring tubular assembles between" has the function to transfer tubular assembles between a first and second means for advancing tubular members.  The structure for the function is recited in the specification.

- The terms "operations auxiliary to drilling," "auxiliary drilling activity," and "drilling operations auxiliary to said drilling" all mean operations removed from the critical path for drilling a well.

- The terms "transfer," "transferring," "transferred," and "transfer tubular assemblies" mean between and from one station to another either directly or indirectly."

- The term "top drive station" means "an assembly of equipment capable of advancing tubular members to the seabed that includes a top drive."

- The terms "a well" and "the well" mean "the apparatus must be capable of operations on "a" well and on other auxiliary operations related to the well – that could "include" one or more wells."

- The term "adjacent to" means "near enough to interact with."

*    *    *

## 2.4    OPEN-ENDED OR "INCLUDING" CLAIMS

The beginnings, or preambles, of Claim 13 of the '781 Patent and Claim 17 of the '069 Patent use the word "including."  "Including" means "comprising" or "containing but not limited to."  That is, if you decide that the rig that is the subject of the drilling services contract between Maersk and Statoil includes all the requirements in Claim 13 of the '781 Patent and Claim 17 of the '069 Patent, those claims are infringed.  This is true even if the accused apparatus includes components in addition to those requirements.

\*    \*    \*

## 3.2    LITERAL INFRINGEMENT

You must decide whether Maersk has sold or offered for sale within the United States an apparatus covered by Claim 13 of the '781 Patent and Claim 17 of the '069 Patent.  You must compare each claim to the rig that is the subject of the drilling services contract with Statoil that Transocean contends was offered for sale and sold to determine whether every requirement of the claim is included in the accused apparatus.

To prove literal infringement, Transocean must prove that it is more probable than not that the rig that is the subject of the contract with Statoil includes each and every requirement in Transocean's patent claim.  If the rig of the contract with Statoil omits any requirement recited in Transocean's patent claim, Maersk does not infringe that claim.

For literal infringement, Transocean is not required to prove that Maersk intended to infringe or knew of the patent.

\*    \*    \*

7

## 3.3    DEPENDENT CLAIMS

So far, my instructions on infringement have applied to what are known as independent claims.   The patents also contain dependent claims.   Each dependent claim refers to an independent claim.   A dependent claim includes each of the requirements of the independent claim to which it refers and one or more additional requirements.

In order to find infringement of dependent Claim 13 of the '781 patent, you must first determine whether independent Claim 10, dependent Claim 11, and dependent Claim 12 of the '781 patent have been infringed.   If you decide that independent Claim 10, dependent Claim 11, or dependent Claim 12 of the '781 patent has not been infringed, then dependent Claim 13 of the '781 patent cannot have been infringed.   If you decide that independent Claim 10, dependent Claim 11, and dependent Claim 12 of the '781 patent have been infringed, you must then separately determine whether each additional requirement of dependent Claim 13 of the '781 patent has also been included in the rig that is the subject of the drilling services contract.   If each additional requirement has been included, then dependent Claim 13 of the '781 patent has been infringed.

Transocean must prove that it is more probable than not that a patent claim has been infringed.

\*    \*    \*

**3.4 INFRINGEMENT – MEANS-PLUS-FUNCTION CLAIMS**

Some patent claim requirements may describe a "means" for performing a function, rather than describing the structure that performs the function. When a claim requirement is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim and also any structure equivalent to the described structures.

Claim 13 of the '781 Patent includes a means-plus-function requirement. This requirement is the "means . . . for transferring tubular assemblies between." *See* [Instruction No. 2.3, Bulletpoint 6, p. 5.]

To establish literal infringement of a claim that includes means-plus-function requirements, Transocean must prove two things:

1. the relevant structure in the accused device performs the *identical* function I identified, and

2. the accused device employs a structure identical or equivalent to the structure described in the patent.

Where the structure in the accused device and the structure disclosed in the patent specification are not identical, Transocean has the burden of proving that it is more probable than not that the relevant structure in the accused device is equivalent to the disclosed structure in the patent, as I have identified it for you.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial for performing the required function. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether people of ordinary skill in the art believed that the structure of the accused product and the structure in the patent were interchangeable at the time the patent was issued by the PTO.

\* \* \*

9

## 4.1    INVALIDITY – GENERALLY

Patent invalidity is a defense to patent infringement.  Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

I will now instruct you on the invalidity issues you should consider.  Maersk bears the burden of proving that it is highly probable that Claim 13 of the '781 Patent and Claim 17 of the '069 Patent are invalid.

*    *    *

**4.2    ENABLEMENT**

Maersk contends that Claim 13 of the '781 Patent and Claim 17 of the '069 Patent are invalid because the patents do not disclose sufficient information to enable one skilled in the field of the invention, at the time the first Transocean patent application was filed, to make and use the claimed invention.   This requirement is known as the enablement requirement. Specifically, Maersk contends that the specification of the Transocean patents does not enable a person of ordinary skill in the art to make and use a "means for transferring" for use in the claimed invention.   The first Transocean patent application was filed on May 3, 1996 and this is the operable time period for your evaluation of the enablement requirement.   If a patent claim is not enabled, it is invalid.   Each claim must be analyzed for compliance with the enablement requirement.   Maersk must prove that it is highly probable that the claim was not enabled.

In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention.   Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain.   Maersk bears the burden of establishing lack of enablement by showing that it is highly probable that a person skilled in the art, upon reading the patent document, would not be able to make the invention work without undue experimentation.   The fact that some experimentation may be required for a skilled person to make or use the claimed invention does not mean that a patent's written description fails to meet the enablement requirement.   Factors you may consider in determining whether making the invention would require undue experimentation include:

1.    the quantity of experimentation necessary;

2.    the amount of direction or guidance disclosed in the patent;

3.    the presence or absence of working examples in the patent;

4.    the nature of the invention;

5.    the state of the prior art;

6.    the relative skill of those in the art;

7.    the predictability of the art; and

8.    the breadth of the claims.

If you find that one or more of these claims did not comply with the enablement requirement, you must find each such claim invalid.

\*    \*    \*

## 4.3.    OBVIOUSNESS

In this case, Maersk contends Claim 13 of the '781 Patent and Claim 17 of the '069 Patent are invalid as obvious.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention as of the date of invention.  This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention.

But a patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art.  Although common sense directs one to look with care at a patent application that claims as innovation the combination of known requirements according to their established functions to produce a predictable result, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does.  This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.  Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.  Teachings, suggestions, and motivations may be found in written references including the prior art itself.  However, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ.  Additionally, teachings, suggestions, and motivations may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of and addressed by the invention.

Therefore, in evaluating whether such a claim would have been obvious, you should consider a variety of factors:

1.    Whether Maersk has identified a reason that would have prompted a person of ordinary skill in the field of the invention to combine the requirements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.

2.    Whether the claimed invention applies a known technique that had been used to improve a similar device or method in a similar way.

But you must be careful not to determine obviousness using hindsight; many true

inventions can seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1. You must consider the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.  The parties agree that a person of ordinary skill in the art is a person who has a bachelor's degree in a pertinent engineering discipline, such as petroleum engineering or mechanical engineering, and 10 years of experience in petroleum drilling, at least half of which is offshore experience.

2. You must consider the scope and content of the prior art. Pertinent, or analogous, prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned.  Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.  For the purposes of determining whether the prior art discloses the features of the claimed invention, you must consider UK Patent Application GB 2.041.836A (the Horn Application) and U.S. Patent No. 4,850,439 (the Lund Patent).

3. You must decide what differences, if any, existed between the claimed invention and the prior art.

## SECONDARY CONSIDERATIONS

Finally, you must consider any of the following factors that you find have been shown by the evidence:

A. Factors tending to show nonobviousness:

1. commercial success of a product due to the merits of the claimed invention;

2. a long-felt, but unsolved, need for the solution provided by the claimed invention;

3. industry skepticism of the claimed invention;

4.      copying of the claimed invention by others;

5.      unexpected and superior results from the claimed invention;

6.      praise from others in the field due to the merits of the claimed invention;

7.      licensing due to the merits of the claimed invention; and

8.      other evidence tending to show nonobviousness.

B.      Factors tending to show obviousness

1.      independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

2.      other evidence tending to show obviousness

You may consider the presence of any of the listed factors A.1 - 8 as appropriate as an indication that the claimed invention would not have been obvious at the time the claimed invention was made.  And you may consider the presence of the listed factors B.1-2 as appropriate as an indication that the claimed invention would have been obvious at such time.

Commercial success must be linked to the features of the invention that were not disclosed in the prior art. If the feature that creates the commercial success was known in the prior art, the success is not pertinent. Similarly, if the commercial success is due to an unclaimed feature, it is irrelevant.

Industry praise must also be attributable to the material difference between the prior art and the patented invention.

Copying is not established by a determination of infringement alone.  Copying requires a replication of a specific product's patented features.

For licensing activity, Transocean must demonstrate that the licenses were due to acceptance and recognition of the patents.

Although you should consider any evidence of these factors that you find meets the required connection to the patented invention discussed above, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable

solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense, and thus obvious.

Maersk must prove that it is highly probable that a claimed invention was obvious. If you find that a claimed invention was obvious as explained above, you must find that claim invalid.

*   *   *

## 5.1   DAMAGES – GENERALLY

I will now instruct you on damages.  If you find that Maersk has infringed one or more of Claim 13 of the '781 Patent or Claim 17 of the '069 Patent and you find that the infringed claim(s) is valid, you must determine the amount of money damages to which Transocean is entitled.  By instructing you on damages, I do not suggest that one or the other party should prevail.  These instructions are provided to guide you on the calculation of damages in the event you find infringement of a valid patent claim and thus must address the damages issue.

The amount of damages must be adequate to compensate Transocean for the infringement, but it may not be less than a "reasonable royalty."  At the same time, your damages determination must not include additional sums to punish Maersk or to set an example.  You may award compensatory damages only for the loss that Transocean proves that it is more probable than not to have been caused by Maersk's infringement.

\*   \*   \*

**5.2**    **DAMAGES – BURDEN OF PROOF**

Where the parties dispute a matter concerning damages, it is Transocean's burden to prove that it is more probable than not that Transocean's version is correct.  Transocean must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision.  However, Transocean is not entitled to damages that are remote or speculative.

*    *    *

**5.3    REASONABLY ROYALTY – DEFINITION**

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place just before the time when the infringing sales or offers for sale first began.  In this case, that date would be November 22, 2006.  In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  However, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In determining the royalty that would have resulted from the hypothetical negotiation you may consider real world facts including the following to the extent they are helpful to you:

## LIST OF FACTORS

(1)    the royalties received by Transocean for the licensing of the patents-in-suit, which proves or tends to prove an established royalty;

(2)    the rates paid by Maersk for the use of other patents comparable to the patents-in-suit;

(3)    the nature and scope of the license, as exclusive or nonexclusive; or as restricted or unrestricted in terms of territory or identity of buyers of the manufactured product;

(4)    Transocean's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

(5)    the commercial relationship between Transocean and Maersk, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor or promoter;

(6)    the effect of selling the patented specialty in promoting sales of other products of  Maersk; the existing value of the invention to Transocean as a generator of sales of its nonpatented items; and the extent of such derivative or convoyed sales;

(7)    the duration of the patents-in-suit and the term of the licenses;

18

(8)     the established profitability of the product made under the patents-in-suit; its commercial success; and its current popularity;

(9)     the utility and advantages of the patent property over old modes or devices, if any, that had been used for working out similar results;

(10)    the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by Transocean; and the benefits to those who have used the invention;

(11)    the extent to which Maersk has made use of the invention; and any evidence tending to prove the value of that use;

(12)    the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or similar inventions;

(13)    the portion of the realizable profit that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(14)    the opinion and testimony of qualified experts; and

(15)    any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

\* \* \*

## INTERROGATORIES

Based on the evidence admitted at trial and in accordance with the instructions as given by the Court, we, the jury, unanimously agree to the answers to the following interrogatories:

## I.       Infringement

1.       Has Transocean proven that it is more probable than not that by entering into a drilling services contract Maersk offered to sell or sold to Statoil a drilling rig that literally infringed the following claims?  Answer "Yes" or "No."  A line is provided for your answer.

   a.    Claim 13 of the '781 patent        _YES_

   b.    Claim 17 of the '069 patent        _YES_

## II.      Obviousness

2.       Has Maersk proven that it is highly probable that each and every element is disclosed in the prior art for each of the listed claims?  Answer "Yes" or "No."  A line is provided for your answer.

   a.    Claim 13 of the '781 patent        _No_

   b.    Claim 17 of the '069 patent        _No_

3(a).    Which of the following factors that tend to indicate nonobviousness, if any, has been established by the evidence with respect to the claimed invention?  Check any that apply.

   ___✔___    Commercial success of a product due to the merits of the claimed invention

   ___✔___    A long felt, but unsolved, need for the solution that is provided by the claimed invention

   ___✔___    Industry skepticism of the claimed invention

   ___✔___    Copying of the claimed invention by others

   ___✔___    Unexpected and superior results from the claimed invention

   ___✔___    Praise from others in the field due to the merits of the claimed invention

   ___✔___    Licensing due to the merits of the claimed invention

20

_____        Any other objective evidence of nonobviousness supported by the evidence

3(b).   Which of the following factors that tend to indicate obviousness, if any, has been established by the evidence with respect to the claimed invention?  Check any that apply.

_____        Independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it

_____        Any other objective evidence of obviousness supported by the evidence

4.   Has Maersk proven that it is highly probable that the following claims would have been obvious to a person of ordinary skill in the art at the time the patent application was filed? Answer "Yes" or "No."  A line is provided for your answer.

a.   Claim 13 of the '781 patent        _____No_____

b.   Claim 17 of the '069 patent        _____No_____

## III.   Enablement

5.   Has Maersk proven that it is highly probable that the following claims of the Transocean Patents are invalid because they are not properly enabled as of May 3, 1996? Answer "Yes" or "No" as to each claim.  A line is provided for your answers.

A.   Claim 13 of the '781   _____No_____

B.   Claim 17 of the '069   _____No_____

## IV.   Damages

Only if you have found that at least one of the asserted claims of the Transocean Patents is infringed and is not invalid, should you answer the next question.

6.   What damages do you find, if any, that Transocean has proven it is more probable than not it has suffered as a result of that infringement.  Answer in dollars and cents, if any.

$: _____15,000,000_____

21

The Presiding Juror should then sign and date the verdict form in the spaces below and notify the marshal that you have reached a verdict.  The Presiding Juror should retain possession of the verdict form and bring it when the jury is brought back into the courtroom.

DATED: _April 21_____, 2011        ███████████████████