UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., | § § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. H-07-2392 |
| MAERSK CONTRACTORS USA, INC., | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION

## I.     INTRODUCTION

Before the Court are the various post-trial motions and briefs of the plaintiff, Transocean

Offshore Deepwater Drilling, Inc., ["Transocean"] and the defendant Maersk Contractors USA,

Inc., ["Maersk"]. Transocean has pending its:  (a) motion for judgment as a matter of law on

indefiniteness [Doc. No. 252]; (b) motion for judgment as a matter of law on enablement [Doc.

No. 253]; (c) motion for judgment as a matter of law of non-infringement [Doc. No. 254]; (d)

motion for judgment as a matter of law on obviousness [Doc. No. 257]; and (e) motion for entry

of a final judgment [Doc. No. 284].

Maersk has pending its:  (a) motion for judgment as a matter of law concerning non-

infringement and obviousness [Doc. Nos. 247]; (b) motion to enter proposed conclusions of law

on enablement [Doc. No. 277]; (c) motion to enter proposed conclusions of law on obviousness

[Doc. No. 279]; and (d) motion for judgment as a matter of law for failure to prove damages

[Doc. No. 246].  Transocean and Maersk have each filed responses and/or replies addressing the

others motions.  The Court has reviewed the motions, responses and replies and determines that a

judgment as a matter of law, pursuant to Federal Rules of Civil Procedure, Rule 50(a) should be entered in behalf of Maersk.

## II.      FACTUAL SUMMARY – JURY VERDICT

### A.      *Factual Background[1]*

The underlying factual history shows that the United States Patent Trademark Office ("PTO") issued United States Patent Nos. 6,047,781 ("the '781 patent") and 6,068,069 ("the '069 Patent") to Transocean on or about July 11, 2000. The invention is described as Multi-Activity Offshore Exploration and/or Development Drilling Method and Apparatus. Transocean's patents generally presents an offshore drilling assembly that includes a superstructure or derrick, a first and second tubular advancing station, and an assembly adjacent to the stations capable of transferring tubular assemblies between the stations allowing simultaneous drilling and auxiliary activities for a single well. As a drilling contractor, Transocean provides drilling rigs to oil companies with the pledge that its invention saves drilling time through the cooperation of the two drilling stations under a single derrick.

On May 27, 2005, A.P. Moller-Maersk A/S negotiated and contracted with Koppel FELS Limited to build a DSS-21, an Ultra Deepwater Development Semisubmersible drilling rig. Maersk A/S is a Denmark corporation and the parent of the defendant Maersk. Maersk entered into a contract on November 22, 2006, with Statoil Gulf of Mexico, LLC to utilize the DSS-21 to fulfill its drilling obligations pursuant to the contract.  And, although the contract between Maersk A/S and Keppel FELS was between two foreign corporations, Transocean contends that Maersk's parent corporation, Maersk A/S acted in behalf of Maersk, permitting Maersk to contract with Statoil to supply the DSS-21 to Statoil which rig infringes its patents.

---

[1] The background facts are as stated by the Court in its Memorandum Opinion, dated May 4, 2009, [Doc. No. 142].

At the time that Maersk contracted with Statoil, Transocean was involved in a suit with Global SantaFe Drilling Co., (GSF), that involved similar allegations of apparatus infringement of the same or similar claims as those asserted in the patents-in-suit. A permanent injunction was granted in behalf of Transocean against GSF in January 2007, enjoining GSF's use of its Development Drillers I and II to reach seabed and for drilling or auxiliary drilling operations.

In the case at bar, the parties acknowledge that the contract between Maersk and Statoil was executed before the rig was completed. Likewise, the parties agree that the terms of the contract permitted Maersk to modify the rig as necessary to avoid infringement of Transocean's patents-in-suit. And, finally, the parties do not dispute that the prior art discloses rigs that are capable of conducting dual operations simultaneously on more than one well.

### B.    Jury Verdict Summary

This dispute was submitted to a jury over several days. On April 21, 2011, the jury returned a verdict in behalf of Transocean based on interrogatories that inquired whether Maersk's utilization of its drilling rig, pursuant to the contract with Statoil infringed Transocean's '069 and '781 patents, in particular, claim 17 of the '069 patent and claim 13 of the '781 patent.  It was Maersk's position that there is no infringement due to "obviousness" and "lack of enablement."   And, at the conclusion of trial, Maersk reiterated in its position, and further claimed that Transocean failed to prove the proper measure of damages, assuming infringement.

Special interrogatories were submitted to the jury.  The jury answered "Yes" to the question whether Maersk had infringed Transocean's '069 and '781 patents.  The jury also answered "No", finding that Maersk had failed to prove that the '069 and '781 patents were obvious.  In further answers on the issue of nonobviousness, the jury found in behalf of

Transocean on each of the nonobvious secondary considerations, and against Maersk on factors indicating obviousness.  The jury also found against Maersk on the issue of whether Transocean's patents were invalid due to lack of enablement.  Finally, the jury awarded Transocean $15,000,000 in damages based on testimony that the sum constituted a reasonable license fee.  The Court now turns to the issues raised.

## III.   OBVIOUSNESS – A QUESTION OF LAW

At the outset, the Court incorporates by reference its Memoranda first entered in this case in May and July of 2009.  *See* [Document Nos. 142 and 148].  In light of this incorporation by reference, the Court will not directly address resolved matters except to (a) focus on the issue(s) raised by the Federal Circuit in its remand and (b) resolve any issue(s) that must be resolved in order to reconcile the jury's verdict and the Court's prior legal conclusions.  To the extent that any party contends that the rulings made here are in conflict with previous written or oral rulings, the prior rulings are withdrawn.

### A.     *Prima Facie Obviousness*

The Federal Circuit expressed the opinion that the combination of the GB Horn '836A and Lund '439 patents teach all the limitations of claim 17 of Transocean's '069 patent and claim 13 of Transocean's '781.  However, it opined that the references alone were insufficient, as a matter of law, to establish obviousness because Transocean had presented "significant objective evidence of nonobviousness."  The Federal Circuit pointed to Transocean's evidence concerning industry skepticism, industry praise for the dual string rig, commercial success, and copying by others including A.P. Moller-Maersk/A/S.

Obviousness is a question of law based on underlying questions of fact.  *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1351 (Fed. Cir. 2010); *Agrizap, Inc. v. Woodstream*

*Corp.,* 520 F.3d 1337, 1343 (Fed. Cir. 2008).  It is the Court's opinion, even in light of the jury's findings concerning the secondary considerations, that Transocean's invention merely combines familiar and known elements that do "no more than yield predictable results."  *Agrizap*, 520 F.3d at 1344.  The Court relies on its reasoning as set forth in its Memorandum and Opinion, dated July 28, 2009, (Document No. 148) and will not restate that reasoning here.  However, the Court will address the secondary considerations that the jury found tends toward nonobviousness.  It is the Court's opinion that the evidence presented is insufficient, as a matter of law, to overcome Maersk *prima facie* case of obviousness.  Therefore, the Court disregards the jury's findings for the reasons stated.

First, the Court is of the opinion that the evidence fails to support the jury's finding that Transocean's dual string rig experienced "commercial success."  The evidence shows that at the time Transocean's patent issued, the drilling industry was fully aware of the possibilities of a dual string rig as prior art. In fact, it had been well established as part of the current rig landscape since 1990.  However, the industry had determined that there was no great demand for the dual-string technology in shallow water drilling.  Only when rig use in deep-waters increased around 2000 did interest in the capabilities of Transocean's new dual string rig attract attention.  By this time, however, Transocean's technology had been rejected in Europe as failing to invent something new. The European patenting authority found that there was no significant difference between the prior art [Lund and Horn] and Transocean's claimed invention.  It found not only did Lund and Horn teach all of the limitations of Transocean's '069 and '781 patents, but that Horn also presented the logic for combining the prior art in its reference.

Hence, this Court concludes that the evidence is insufficient and fails to support the jury's findings of commercial success, in light of the prior art.  Further, the Court holds that in

light of the fact that Transocean's sale of its technology is due primarily to various litigation, those sales do not support the argument for commercial success as the sales are not a result of a free market.  *See EWP Corp. v. Reliance Universal Inc.,* 755 F.2d 898, 907 - 08 (Fed. Cir. 1985).

Likewise, the evidence fails to establish a "long felt but unresolved," need for dual string technology. That is what the Lund and Horn patents accomplished. Both sought, as did Transocean, to increase efficiency by multitasking. Moreover, until deepwater drilling commenced in earnest, there was no substantial appetite for dual string technology.  Finally, the Court holds that dual string technology is not Transocean's invention.  Transocean merely claims that its second string is capable of extending to the seabed and that this use was a new idea.

The evidence also fails to support Transocean's claim and the jury's finding that there existed "industry skepticism" about the use of dual string technology.  It may be argued that a few in the market were skeptical; however, that issue was addressed in literature in 1990 or earlier; several years before Transocean filed its application with the Patent and Trademark Office in 1996.

Finally, there is no evidence of "unexpected and superior results" or "industry praise" associated with the use of the dual string technology.  While the claimed invention speaks about these factors, there is no statistical data or testimony supporting the jury's findings that these elements have actually manifested in the industry apart from Transocean's litigation. Hence, Transocean's time-saving claims are unsupported by independent data beyond the representation found in Transocean's patents and promotional literature.

Therefore, the Court concludes that the evidence offered in support of secondary considerations, regarding nonobviousness is unsupported by data or other objective evidence. Hence, the jury's findings concerning nonobviousness secondary considerations do not

overcome the Court's holding of *prima facie* obviousness.  *See Leapfrog Enters, Inc. v. Fisher-Price, Inc.,*  485 F.3d 1157, 1162 (Fed. Cir. 2007).  As well, the evidence failed to establish a nexus to the claimed invention.  For example, there is no evidence that Transocean's claimed success rested in the features of the claimed invention.  Nor is there evidence that the commercial leases obtained were associated with the features of claimed invention.  Hence, the subject matter as a whole would have been obvious, and was, in fact, obvious in 1996 to a person of ordinary skill in the art.[2]

> B.     *Lack of Enablement*

The jury determined that Maersk had failed to prove that it [was] highly probable that claims 13 of the '781 and claim 17 of the '069 patents were invalid because they were not properly "enabled."  Whether a claim is invalid for failure to meet the requirements of 35 U.S.C. § 112 is a question of law on which Maersk bears the burden of proof by clear and convincing evidence. *See Dreamworks, LLC,* 516 F.3d at 999.  The Court addressed the issue of enablement in its previous Memorandum and Opinion.  (*See* Doc. No. 148).  After the testimony of witnesses, the Court concludes that no new evidence was presented that persuaded the Court that its summary judgment should be withdrawn.  By this assertion, the Court is not shifting the burden of proof to Transocean, but holding that the evidence presented by Transocean fails to support the advisory findings of fact made by the jury, and fails to negate the summary judgment evidence.  Therefore, the Court holds that a person skilled in the art would not be able to make and use the invention described without undue experimentation.  *See Magnetic Separation Sys.,*

---

[2] The testimony of Transocean's witnesses shows that it took just two weeks for their inventors to combine the concepts of *Horn,* dual driller and *Lund,* pipe handler for the '069 and '781 claimed inventions.  The difference between the subject matter sought to be patented by Transocean and the prior art were obvious at the time of the claimed invention and had been rejected in Europe as an invention.  *See* 35 U.S.C. § 103(a); *see also Graham v. John Deere Co.*, 383 U.S. 1 (1966).

*Inc.,* 166 F.3d 1190, 1995 - 96 (Fed. Cir. 1999); *See also Liebel-Flarsheim v. Medrad, Inc.,* 481 F.3d 1371, 1379 (Fed. Cir. 2007).[3]

Alternatively, the Court is of the opinion that the enablement protocol was so obvious that it failed to invent or enable the claimed invention.  The fact that Transocean expended enormous time creating a mechanical device that would assemble, transfer and/or store tubulars, failed to add anything to the claimed invention.  The prior history teaches that a tubular system would be required for any dual string driller.  Transocean's extremely sophisticated mechanical devices, therefore, added nothing to the claimed invention and Transocean admits such.  Thus, the inclusion of known equipment that would be necessary for a dual string driller added nothing to the claimed invention.  And, to the extent that Transocean now claims that device as part of its invention, the specifications of the '069 and '781 patents fail to enable it.

###### C.    *Lack of Infringement*

Transocean asserts that Maersk infringed its '069 and '781 patents by "sale" or "offer for sale" of its drilling rig, the DSS-21. The evidence shows that Maersk contracted to perform a drilling service for Statoil intending to use its parent company's yet to be constructed DSS-21. It is undisputed that the final design of the DSS-21 hinged on the outcome of pending litigation in this District.  *See Transocean Offshore Deepwater Drilling, Inc. v. Global Santa Fe Corp.*, No. H-03-2910, 2006 WL 3227315 (Nov. 6, 2006 S.D.Tex). Therefore, the contract for the drilling services forecasted that the DSS-21 would be appropriately modified to bring it into compliance with the law before it became operational.  In fact, at the time of the completion of the DSS-21, the rig had been modified to avoid a claim of infringement.  The Court concludes that because

---

[3] While Transocean claims as part of its invention "transferring equipment" technology, the invention fails to disclose the pipe handling equipment so that one skilled in the art might readily know how to make the transfers happen.  *See Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008).  A patent specification must contain an enabling disclosure for the claimed invention.  *Id.*

the contract anticipated that resolution of the *Global Santa Fe* litigation would be determinative of the final design, no rig was offered for sale, or sold in violation of  35 U.S.C. § 271(a).

The evidence also fails to show that a sale or offer for sale of the DSS-21 was ever made. (*See* Doc. No. 142). The contract between Statoil and Maersk called for "drilling services" by Maersk on Statoil's site.  The Court is of the opinion that, while using an infringing device to perform a drilling agreement may constitute a violation of § 271(a), that claim was not made by Transocean. Moreover, the evidence establishes that, no such use occurred. Therefore, as a matter of law, the contract between Statoil and Maersk did not constitute a sale or offer for sale of a rig that infringed either the '069 or '781 patents.

## IV.    THE PROPER MEASURE OF DAMAGES

Transocean presented evidence that the proper measure of damages for Maersk's infringement was an upfront lump-sum royalty of $15,000,000.  In addition, Transocean seeks to recover prejudgment interest of $8,733,211, based on the jury's award of interest at a rate of 10% per year, compounded daily from November 22, 2006.  Transocean relies on 35 U.S.C. § 284 as the basis for its claim for an upfront lump-sum royalty. Generally § 284(1) provides that the minimum amount of damages that a patentee may recover for infringement is a reasonable royalty. In response to Transocean's claim for a reasonable royalty, Maersk asserts that:  (a) Transocean suffered no harm due to an infringing act; (b) Transocean failed to offer evidence that supports the jury's damage award; and (c) Transocean failed to comply with the notice requirements of 35 U.S.C. § 287.

The Court is of the opinion that Transocean is not entitled to an award of damages for the reasons previously stated concerning obviousness, lack of enablement, and lack of infringement. The Court is also of the opinion that because there was no contract to "sell" or an "offer to sell"

the DSS-21, there is no basis for a claim of damages.  In order for Transocean to recover damages based on infringement, it must establish an injury due to acts that occurred in the United States.  *See NTP, Inc. v. Research in Motion Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir. 2005). Conduct outside the United States is irrelevant and does not confer rights under the laws of the United States.  *See Rotec Indus., Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1251 (Fed. Cir. 2000). Hence, Maersk was free to enter into a contract with Statoil to use the DSS-21 in any configuration outside the United States and its territories.  *See Transocean Offshore Deepwater Drilling, Inc. v. Stena Drilling Ltd.,* No. H-07-2797, 2008 WL 2065808 (May 13, 2008 S.D. Tex.)

A review of the contract between Maersk and Statoil and the finished product, the DSS-21, reveals that Maersk did not make, use, offer to sell or sell a patented invention in the United States or elsewhere. An offer to enter into a contract that includes language that avoids infringement cannot constitute an infringing act. Therefore, no infringing act occurred upon which damages might be assessed.  Moreover, the evidence also shows that the services that were to be provided to Statoil did not require the use of an infringing rig. It is undisputed that a modified non-infringing rig was delivered to Statoil's site for drilling.

Assuming, however, that simply entering into a contract that permits modification of an otherwise infringing rig constitutes infringement, an award of a "reasonable royalty" may be unconscionable because the harm may be *de minimis*.  *See* Holbrook, T. *Liability for the 'Threat of Sale': Assessing Patent Infringement for Offering to Sell an Invention and Implications for the On-Sale Patentability Bars and other Forms of Infringement*, 43 Santa Clara L. Rev. 751, 789 - 792 (2003).  The true question is what is the economic impact, if any, to Transocean or the market under the facts of this case?

The evidence shows that the alleged "infringer" did not practice the claimed invention in the United States.  And, there is no evidence that Transocean was required to lower its price on its dual string rig to compete with Maersk for the Statoil contract. In fact, the evidence shows that Transocean did not bid its dual string rig but, instead, submitted a bid based on its single string rigs.  It appears, therefore, that in this instance, "price erosion" may be the proper measure of damages.  *Id*. at 791 - 92.  Nevertheless, there is no evidence of price erosion.

The Court is of the opinion that a "reasonable royalty" is an improper measure of damages because there is no evidence of actual harm. Equally, there is no evidence that Transocean lost an opportunity to sell or use its patented invention when it submitted its bid to Statoil. In fact, the evidence shows that construction on the patented invention had not been completed.

**V.     CONCLUSION**

It is, therefore, ORDERED that Transocean shall take nothing by its suit against Maersk and that a Final Judgment shall be entered, accordingly.

SIGNED at Houston, Texas this 30th day of June, 2011.

_____
Kenneth M. Hoyt
United States District Judge